**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
**FILED**

*April 30, 2025*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO.: 4:25- |
| | § | |
| v. | § | SEALED **4:25-cr-213** |
| | § | |
| TAMMY BRIGGS, | § | |
| TAMEKA BOURNE, and | § | |
| CORETTA TURNER, | § | |
| Defendants | § | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment:

### General Allegations

1.     The Federal Employee's Compensation Act ("FECA") provided for the payment of workers' compensation benefits to federal employees who suffer an on-the-job injury. The benefits under FECA included continuation of pay for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies, vocation rehabilitation services, disability payments, and reimbursement for medically-related travel.   FECA was a health care benefit program as defined in Title 18, United States Code, Section 24(b). The United States Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered FECA workers' compensation benefits.

2.     DOL-OWCP and FECA provided wage loss compensation and medical benefits to employees of the United States Postal Service ("USPS"). To receive workers' compensation benefits, USPS employees who suffered an on-the-job injury were required to file an "on-the-job injury claim" with USPS, which would be reviewed for approval by DOL-OWCP.   If

approved, workers' compensation-related payments would begin shortly thereafter.

3.     Within the first 120 days after an accepted on-the-job injury claim, DOL- OWCP would allow physical therapy services without prior authorization.   After the initial 120-day period, DOL-OWCP required prior authorization of additional therapy and a showing of need for ongoing physical therapy.

4.     DOL-OWCP offered reimbursement to approved injured USPS employees for traveling to and from physical therapy. Claimants seeking medically related travel reimbursements were required to complete Form OWCP-957, entitled "Medical Travel Refund Request." Form OWCP-957 required claimants to provide information to substantiate their medically-related travel claims, including the date of the medically-related travel, the starting and ending locations of the medically-related travel, the name and address of the medical facility, and the total distance in miles traveled and any parking/toll fees incurred.

<u>Related Entities and Individuals</u>

5.     Co-conspirator A was a chiropractor who owned and operated Company 1, a chiropractic office located in Houston, Texas.

6.     Company 1 was enrolled with the OWCP, which authorized it to submit claims to DOL-OWCP for services provided to FECA beneficiaries.   Company 1 purportedly provided land-based and aquatic therapy services to FECA beneficiaries.

7.     Defendant TAMMY BRIGGS was a resident of Beaumont, Texas, and was a USPS employee from on or about September 4, 1993 through in or about March 2024. TAMMY BRIGGS filed an "on the job injury claim" on or about November 7, 2017.

8.     Defendant TAMEKA BOURNE was a resident of Beaumont, Texas, and was a

2

USPS employee from in or about June 2020 through in or about August 2024.   TAMEKA

BOURNE filed an "on the job injury claim" on or about March 11, 2022.

9.       Defendant CORETTA TURNER was a resident of Beaumont, Texas and was a

USPS employee from in or about February 1, 2005 through in or about July 2024. CORETTA

TURNER filed an "on the job injury claim" on or about December 3, 2019.

10.      Co-conspirator B was a resident of Beaumont, Texas, and was a USPS employee

from on or about March 4, 2015 through in or about August 2024. Co-conspirator B filed an "on

the job injury claim" on or about May 29, 2020.

### <u>COUNT ONE</u>
**Conspiracy to Defraud and to Commit Offenses Against the United States**
**(18 U.S.C. § 371)**

11.      Paragraphs 1 through 10 are incorporated herein by reference.

12.      Beginning on a date unknown but no earlier than 2021 and continuing through in

or about October 2023, in the Southern District of Texas and elsewhere, the defendants,

**TAMMY BRIGGS,**
TAMEKA BOURNE, and
CORETTA TURNER,

knowingly and willfully conspired and agreed together and with Co-conspirator A, Co-conspirator

B, and others both known and unknown to the Grand Jury, to: (1) defraud the United States by

submitting Form OWCP-957s with materially false information to the DOL-OWCP and receiving

reimbursements from the DOL-OWCP to which they were not entitled, and (2) to commit offenses

against the United States, namely theft in violation of Title 18, United States Code, Section 641

and fraud to obtain federal employees' compensation exceeding $1,000 in violation of Title 18,

United States Code, Section 1920.

3

**Object of the Conspiracy**

13.     The object of the conspiracy was to receive compensation from the DOL-OWCP in connection with medically-related therapy services that Individual A and Company 1 never provided.

**Manner and Means of the Conspiracy**

14.     It was a part of the conspiracy that TAMMY BRIGGS, TAMEKA BOURNE, CORETTA TURNER, and Co-conspirator B would submit on-the-job injury claims to the USPS for the DOL-OWCP to approve for workers' compensation benefits.

15.     It was further a part of the conspiracy that TAMMY BRIGGS, TAMKEA BOURNE, CORETTA TURNER, and Co-conspirator B would submit to the DOL-OWCP Forms OWCP-957 containing false representations regarding distances traveled to receive therapy services from Individual A and Company 1 that were never rendered.

16.     It was further a part of the conspiracy that TAMMY BRIGGS would assist TAMEKA BOURNE, CORETTA TURNER, Co-conspirator B, and others in preparing Forms OWCP-957 containing false representations, and in interfacing with the DOL-OWCP.

17.     It was further a part of the conspiracy that TAMMY BRIGGS, TAMEKA BOURNE, and CORETTA TURNER would collude with Individual A via text message to ensure that there would be no discrepancies in the dates for which TAMMY BRIGGS, TAMEKA BOURNE, and CORETTA TURNER made false travel reimbursement claims and the dates for which Individual A and Company 1 would bill for therapy services not rendered.

18.     It was further a part of the conspiracy for TAMMY BRIGGS, TAMEKA BOURNE, and CORETTA TURNER to receive travel reimbursements to which they were not

entitled from the DOL-OWCP, and for Individual A to bill the DOL-OWCP for therapy services not rendered.

Overt Acts

19.    In furtherance of the conspiracy and to effect the object of the conspiracy, the following overt acts, among others, were committed in the Southern District of Texas and elsewhere:

a.    On or about May 13, 2022, TAMMY BRIGGS falsely claimed on a Form OWCP-957 that she traveled from Beaumont, Texas to Houston, Texas to receive therapy services on April 20, 2022; April 22, 2022; and April 25, 2022.

b.    On or about May 17, 2022, Co-conspirator A and Company 1 billed the DOL-OWCP for unrendered therapy services purportedly provided to TAMMY BRIGGS on April 20, 2022; April 22, 2022; and April 25, 2022.

c.    On or about June 1, 2022, TAMEKA BOURNE falsely claimed on a Form OWCP-957 that she traveled from Beaumont, Texas to Houston, Texas to receive therapy services on April 22, 2022; April 25, 2022; and April 27, 2022.

d.    On or about June 7, 2022, Co-conspirator A and Company 1 billed the DOL-OWCP for unrendered therapy services purportedly provided to TAMEKA BOURNE on April 22, 2022; April 25, 2022; and April 27, 2022.

    e.       On or about November 10, 2022, CORETTA TURNER falsely claimed on a Form OWCP-957 that she traveled from Beaumont, Texas to Houston, Texas and Pearland, Texas to receive therapy services on October 4, 2022; October 5; and October 6, 2022.

    f.       On or about December 30, 2022 Co-conspirator A and Company 1 billed the DOL-OWCP for unrendered therapy services purportedly provided to CORETTA TURNER on October 4, 2022; October 5, 2022; and October 6, 2022.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR
### Theft
### (18 U.S.C. § 641)

20.    Paragraphs 1 through 19 are incorporated herein by reference.

21.    On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants set forth below willfully and knowingly did steal and purloin money from the Department of Labor, a department or agency of the United States, specifically money and funds in excess of $1,000 related to workers' compensation benefits travel reimbursements, to which the defendants were not entitled.   All in violation of Title 18, United States Code, Section 641.

| Count | Defendant | Date | Approximate Amount Stolen |
|-------|-----------|------|---------------------------|
| TWO | TAMMY BRIGGS | Between in or about March 2021 and in or about October 2023 | $43,961.35 |
| THREE | TAMEKA BOURNE | Between in or about March 2022 and in or about October 2023 | $44,600.66 |
| FOUR | CORETTA TURNER | Between in or about September 2022 and in or about June 2023 | $2,690.25 |

## COUNTS FIVE THROUGH SEVEN
### False Statement regarding Workers' Compensation Benefits
### (18 U.S.C. § 1920)

22.    On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants set forth below, with intent to defraud, did knowingly and willfully make false, fictitious and fraudulent representations for receipt of compensation or other benefit or payment under subchapter I and III of chapter 81 of Title 5, to wit: the defendants did file false Forms 957 with the DOL-OWCP in connection with the receipt of medically-related travel benefits to which the defendants were not entitled, specifically, money and funds in excess of $1,000.    All in violation of Title 18 U.S.C. § 1920.

| Count | Defendant | Date |
|---|---|---|
| FIVE | TAMMY BRIGGS | Between in or about March 2021 and in or about October 2023 |
| SIX | TAMEKA BOURNE | Between in or about March 2022 and in or about October 2023 |
| SEVEN | CORETTA TURNER | Between in or about September 2022 and in or about June 2023 |

### NOTICE OF CRIMINAL FORFEITURE

23.    Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, 981(a)(C), the United States gives notice to the defendants that in the event of conviction of violating Title 18, United States Code, Sections 371 or 641, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s) of conviction.

### SUBSTITUTE ASSETS

24.    Defendants are notified that in the event that property subject to forfeiture, as a result

7

of any act or omission of Defendants,

   A) Cannot be located upon the exercise of due diligence;

   B) Has been transferred or sold to, or deposited with, a third party;

   C) Has been placed beyond the jurisdiction of the Court;

   D) Has been substantially diminished in value; or

   E) Has been commingled with other property that cannot be divided without
      difficulty,

it is the intent of the United States to seek forfeiture of any property of Defendants up to the total

value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by

reference in Title 28, United States Code, Section 2461(c).

## MONEY JUDGMENT

   25. Defendant is notified that upon conviction, a money judgment may be imposed equal

to the total value of the property subject to forfeiture.

                                             TRUE BILL

                                             Original Signature on File

                                             Foreperson Signature

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By:  *Alexander Alum*

     Alexander Alum
     Assistant United States Attorney

8